394 F.2d 396
 NATIONAL LABOR RELATIONS BOARD, Petitioner, and
International Union, United Automobile, Aerospace
and Agricultural Implement Workers of
America, UAW, Intervenor,
v.
UNIVERSAL GEAR SERVICE CORPORATION, Respondent.
 No. 17699
 United States Court of Appeals Sixth Circuit.
 May 16, 1968.
 
 Edward E. Wall, National Labor Relations Board, Washington, D.C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Michael N. Shon, Atty., National Labor Relations Board, Washington, D.C., on the brief.
 Marvin Breskin, Detroit, Mich., for respondent, Edward M. Miller, Birmingham, Mich., of counsel.
 Before PECK and COMBS, Circuit Judges, and CECIL, Senior Circuit judge.
 JOHN W. PECK, Circuit Judge.
 
 
 1
 The National Labor Relations Board petitioned the Court for enforcement of its order of March 29, 1966, 157 NLRB No. 99, which found the Universal Gear Service Corporation (herein the 'Company') guilty of violating Section 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. 158(a)(5) and (1), by refusing to bargain with Local 155, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO (herein the 'Union').
 
 
 2
 The stipulated facts in support of the Board's decision may fairly be summarized as follows: After a check of Union authorization cards by a neutral third party disclosed that 16 of approximately 21 employees of the appropriate bargaining unit had signed authorization cards, the Company recognized the Union as the employees' exclusive collective bargaining representative, and executed a recognition agreement on December 14, 1964. About two weeks after the recognition agreement was entered into, an employee petitioned the Board for decertification of the Union, whereupon the Company refused to recognize and bargain with the Union pending disposition of the petition. The petition was subsequently withdrawn after a vote at an employees' meeting indicated that a majority favored retaining the Union. The parties then commenced contract negotiations on February 10, 1965. However, on February 29, 1965, the Company again withdrew recognition of, and refused to bargain with, the Union because of the filing of a second decertification petition supported by a showing of interest of less than 50 percent of the employees in the bargaining unit. It is the Company's position that this second petition provided a basis for a good faith doubt of the Union's majority.
 
 
 3
 The Board concluded that the filing of a decertification petition under the circumstances disclosed did not constitute sufficient grounds for the Company to withdraw recognition of and refuse to bargain with the Union. Relying on Franks Bros. Co. v. N.L.R.B., 321 U.S. 702, 705, 64 S.Ct. 817, 88 L.Ed. 1020 (1944), the Board held that 'a bargaining relationship once rightfully established must be permitted to exist and function for a reasonable period in which it can be given a fair chance to succeed.' It was thus the Board's determination that the Union had not enjoyed the reasonable period of bargaining to which it was entitled as an established representative of the Company's employees, and that the Company violated Section 8(a)(5) and (1) of the Act in refusing to maintain the bargaining relationship after February 29, 1965.
 
 
 4
 In an attempt to impart some stability to bargaining relationships, the Board early adopted a rule under which a union certification, if based on a Board conducted election, must be honored for 'a reasonable period,' generally one year. This rule seemingly received congressional approval in 1947 when the NLRA was amended by the Taft-Hartley Act to provide, inter alia, that a certification could only be granted as a result of an election, and that no election shall be held in any bargaining unit within twelve months of a preceding valid election. 29 U.S.C. 159(c)(1) and (3) respectively. And in Brooks v. N.L.R.B., 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954), the court held that informal repudiation of a union by a majority of the employees in the bargaining unit shortly after certification did not relieve the company of its duty to bargain. It is therefore settled that absent unusual circumstances an employer must bargain with a union certified after an election for a period of one year from the date of the Board's certification, even if the union loses its majority status through no fault of the employer. N.L.R.B. v. U.S. Sonics Corp., 312 F.2d 610 (1st Cir.1963); N.L.R.B. v. Lynair, Inc., 380 F.2d 286 (6th Cir.1967). While the Union in the present case was not certified by the Board, there is no question but that it was lawfully designated the exclusive bargaining representative of the Company's employees by means of the authorization cards (See e.g., United Mine Workers of America v. Arkansas Oak Flooring Co., 351 U.S. 62, 76 S.Ct. 559, 100 L.Ed. 941 (1955)), and was recognized as such by the Company.
 
 
 5
 In Brooks, supra, the Supreme Court summarized the generally accepted bases underlying the one-year certification rule. While several of the reasons there set forth are pertinent only to situations where an election has been conducted, the following two are not so limited:
 
 
 6
 '(c) A union should be given ample time for carrying out its mandate on behalf of its members, and should not be under exigent pressure to produce hothouse results or be turned out.
 
 
 7
 '(d) It is scarcely conducive to bargaining in good faith for an employer to know that, if he dillydallies or subtly undermines, union strength may erode and thereby relieve him of his statutory duties at any time, while if he works conscientiously toward agreement, the rank and file may, at the last moment, repudiate their agent.' 348 U.S. at 100, 75 S.Ct. at 179.
 
 
 8
 As claimed by the Board, these reasons have relevance to the problem presented in the instant case and support its determination that 'only if the parties can rely on the continuing representative status of the lawfully recognized union, at least for a reasonable period of time, can bargaining negotiations succeed and the policies of the Act be effectuated.' Reasoning similar to that urged here by the Board has been sustained in decisions holding that an employer must bargain with a union for a reasonable period without regard to its majority status where the bargaining relationship arose as a result of a settlement agreement. Poole Foundry & Mach. Co. v. N.L.R.B., 192 F.2d 740 (4th Cir.1951), cert. denied, 342 U.S. 954, 72 S.Ct. 626, 96 L.Ed. 709 (1952); W. R. Johnston Grain Co. v. N.L.R.B., 365 F.2d 582 (10th Cir.1966); N.L.R.B. v. N. J. MacDonald & Sons, Inc., 155 N.L.R.B. No. 13, enf's, 62 LRRM 2296 (1st Cir.1966); cf. Keller Plastics Eastern, Inc., 157 NLRB No. 55 (1966); see also N.L.R.B. v. S. H. Kress & Co., 194 F.2d 444 (6th Cir.1952) (Board order); N.L.R.B. v. Lynair, supra (Court decree). In addition, it cannot be said that the Board's determination favoring stability of bargaining relationships should, in this case, yield to the countervailing consideration of the employees' right to freedom of choice of bargaining representative, since the record here does not disclose that a majority of the employees in the bargaining unit has rejected the union. Cf. N.L.R.B. v. Mayer, 196 F.2d 286 (5th Cir.1952). In accordance with the foregoing, it is here determined that the Board's decision finding the Company's refusal to bargain to be unjustified is not arbitrary, and the petition for enforcement of its order should be granted.
 
 
 9
 Enforcement granted.