**MAMMOTH OF CALIFORNIA, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Brotherhood of Teamsters, Local 70, Intervenor.**

**Nos. 81–7106, 81–7226.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 13, 1981.

Decided April 8, 1982.

Thomas M. Giovacchini, Fresno, Cal., argued for petitioner; Thomas E. Campagne, Fresno, Cal., on brief.

Joseph A. Oertel, Washington, D. C., argued for respondent; Elliott Moore, N.L.R.B., Washington, D. C., on brief.

David Rosenfeld, San Francisco, Cal., argued for intervenor; Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., on brief.

Before MERRILL and FLETCHER, Circuit Judges, and CLAIBORNE,* District Judge.

OPINION

MERRILL, Circuit Judge:

Mammoth of California, Inc. petitions for review of an order of the National Labor Relations Board requiring it to bargain with the Brotherhood of Teamsters and Auto Truck Drivers, Local 70, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Union). The Board cross-petitions for enforcement of its order.

On June 13, 1978 the Union was certified as the exclusive bargaining representative of all local pick-up and delivery drivers of Mammoth at its facility in San Leandro, California. Shortly thereafter, Mammoth informed the Union that its less-than-truckload operation in San Leandro had become unprofitable and would be eliminated. The Union then, on August 3 and October 2, 1978, filed unfair labor practice charges with the Board. After investigation, the Board's Regional Director, on December 29, 1978, issued a complaint alleging refusal to bargain in violation of § 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5).

On April 13, 1979 Mammoth and the Union entered into a settlement agreement by which Mammoth agreed to make a lump sum payment to employees discharged as a result of its reduction in operations. In consideration of the withdrawing of the unfair labor practice charges, Mammoth agreed to post a notice stating that it would in the future bargain with the Union upon request. The settlement received approval of the Regional Director.

On July 19, 1979 employees from the bargaining unit filed with the Board a petition to have the Union decertified and Mammoth was advised by the employees that they no longer wished the Union to represent them. On August 16, 1979 Mammoth informed the Union that it was withdrawing recognition since it believed that the Union had lost its majority status. The Union filed an unfair labor practice charge and the Regional Director issued a complaint charging refusal to bargain. In due course, the Board entered its order finding Mammoth guilty of unlawful refusal to bargain and ordering it to cease and desist from withdrawing recognition of the Union and to bargain with the Union upon request.

■ The law is clear that an employer must engage in good faith bargaining with a union following its certification for a reasonable period of time, usually one year. *Brooks v. NLRB*, 348 U.S. 96, 98, 75 S.Ct. 176, 178, 99 L.Ed. 125 (1954); *Pioneer Inn Associates v. NLRB*, 578 F.2d 835, 838 (9th Cir. 1978); *cf.* 29 U.S.C. § 159 (c)(3) (Board shall not order an election in any bargaining unit within which a valid election was conducted in the preceding twelve months). Mammoth contends that it satisfied this requirement since the certification year had expired on July 13, 1979, one month before it withdrew recognition of the Union. The Board held, however, that by its settlement agreement Mammoth had agreed to bargain upon request of the Union for a reasonable period of time and that this can result in

* Honorable Harry E. Claiborne, United States Chief District Judge, District of Nevada, sitting by designation.

extension of the certification year. The Board relies on *Poole Foundry and Machinery Company v. NLRB*, 192 F.2d 740, 743 (4th Cir. 1951), *cert. denied*, 342 U.S. 954, 72 S.Ct. 626, 96 L.Ed. 709 (1952), where it was stated:

Poole, by entering into the settlement agreement, thereby securing a withdrawal of the charges of unfair labor practices, is bound to bargain in good faith with the Union for a reasonable period of time after such agreement, without questioning the Union's lack of a majority. The settlement agreement was signed December 27, 1949. Poole's refusal to bargain was in early April, 1950, less than four months after the settlement agreement. The Board has found that this was not a reasonable period. We feel bound by this determination since we cannot say it was arbitrary.

. . . . .

Thus, it follows that Poole, after having solemnly agreed to bargain with the Union, should not be permitted, within three and one-half months after the agreement, to refuse so to bargain, even if, as here, the Union clearly did not represent a majority of the employees.

In *Poole* the charged violation occurred after expiration of the certification year and thus did not result in an extension of that year. The *Poole* holding was applied to extend the certification year in *Johnston Grain Co. v. NLRB*, 365 F.2d 582 (10th Cir. 1966), where a charge of refusal to bargain had been settled by agreement and withdrawn five weeks prior to expiration of the certification year. Recognition was withdrawn by the employer six weeks after the settlement and eight days after expiration of the certification year. The court held:

[W]e hold that the Company was required, under the settlement agreement, to bargain with the Union for a reasonable time after the date of the approval of the settlement agreement, even though the year from the date of certification had expired, and without regard to any changes in the Union's majority status during such reasonable period.

*Id.* at 586. The court further stated:

It is true that the settlement agreement was not an admission that the Company had been guilty of an unfair labor practice by refusing to bargain, but a party who enters into a valid compromise agreement for the settlement of litigation may not thereafter escape its obligation to carry out the settlement agreement, on the ground that the claim asserted against it, which was settled by the agreement, was groundless. Moreover, the Board, by entering into the settlement agreement, clearly manifested an administrative determination by it that some remedial action was necessary and it made concessions to secure the remedial action provided for by the settlement agreement.

*Id.* at 587.

Mammoth contends that in absence of a Board order an agreement of settlement should extend the certification year only when the agreement makes clear the intent of the parties to accomplish such an extension. It relies on *NLRB v. Vantran Electric Corp.*, 580 F.2d 921 (7th Cir. 1978). That case, however, is distinguishable, and by dicta lends support to the *Johnston Grain* holding. It approves application of the *Poole* holding to extend the certification year where the promise to bargain is in connection with an informal settlement[1] which "clearly manifests an administrative

---

1. The Board's Casehandling Manual defines three different kinds of settlements of unfair labor practice charges:

    1. The formal settlement, which ordinarily requires a Board order followed by a court order of enforcement. § 10164.

    2. An informal settlement, which is defined in the manual as "a simple written agreement, providing that the charged party will take certain action in remedy of the unfair labor prac-

tices. It requires the approval of the Regional Director but does not provide for a Board order or court decree." § 10146.1.

    3. "Non-board settlements," which are expressly recognized in the manual at § 10142. If the Regional Director is willing to let the parties go it on their own, he can give his consent; if they reach an agreement and the Union wishes to withdraw its charge he can give his consent. No approval is required.

determination by the Board that some remedial action is necessary to safeguard the public interests intended to be protected by the National Labor Relations Act." *Poole, supra,* 192 F.2d at 743. The *Vantran* court noted, however, that the settlement before it was a "non-Board" or "out-of-Board" settlement in which the Regional Director had taken no part except to give his consent to the parties proceeding on their own and to the withdrawal of charges by the Union.

As in *Poole* and *Johnston Grain,* the settlement in this case was an informal settlement where the Regional Director had taken part on behalf of the Board, rather than a non-Board settlement as in *Vantran.*

■ We conclude that by its settlement, Mammoth had committed itself to bargain with the Union for a reasonable period of time without regard to the expiration of the certification year and without regard to any changes in the Union's majority status. Further, we conclude that under any rational standard a reasonable period can fairly be said to extend for the four months from April 13, 1979 beyond August 16, 1979. *Poole, supra; see Straus Communications, Inc. v. NLRB,* 625 F.2d 458, 464 (2nd Cir. 1980). Accordingly the agreement to bargain was still in effect when Mammoth withdrew its recognition of the Union and that withdrawal of recognition constituted an unfair labor practice. It was therefore proper for the Board to order Mammoth to continue to bargain with the Union until a reasonable time following execution of the agreement on April 13, 1979 had expired.

We affirm the disposition of the Board and order its enforcement.