NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

PACE OLDSMOBILE, INC., Respondent.

No. 760, Docket 81–4207.

United States Court of Appeals,
Second Circuit.

Argued April 5, 1982.

Decided May 28, 1982.

Linda Dreeben, Washington, D. C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, NLRB, Washington, D.C., on brief), for petitioner.

Stuart M. Kirshenbaum, New York City (Lawrence I. Milman, Milman, Naness & Pollack, New York City, on brief), for respondent.

Before KEARSE and PIERCE, Circuit Judges, and LEVAL,* District Judge.

* The Honorable Pierre N. Leval, of the United States District Court for the Southern District of New York, sitting by designation.

PER CURIAM:

Petitioner National Labor Relations Board (the "Board") seeks enforcement of its order, 256 N.L.R.B. No. 111, issued on July 1, 1981, (the "Order"), requiring respondent Pace Oldsmobile, Inc. ("Pace" or the "Company"), to cease and desist from certain practices found to be violations of §§ 8(a)(1), (3), and (5) of the National Labor Relations Act (the "Act"), 29 U.S.C. §§ 158(a)(1), (3), and (5) (1976), and to undertake certain remedial actions, including bargaining with Amalgamated Local Union 355 (the "Union"). We enforce the Order except to the extent that it requires Pace to bargain with the Union; as to the bargaining order we vacate and remand.

## BACKGROUND

The facts found by the Administrative Law Judge ("ALJ") and affirmed by the Board may be summarized as follows. In November 1979 the Union began a campaign to organize certain Pace employees. By December 4 the Union had obtained signed authorization cards from fourteen of the 18–22 employees in the appropriate bargaining unit, and the Union demanded recognition as the employees' collective bargaining representative. Pace refused this demand. On January 3, 1980, fourteen or fifteen of the employees went on strike; they remained on strike until February 27, when they unconditionally offered to return to work. The company thereupon reinstated most of the strikers.

The ALJ found that during the period November 28, 1979, through February 27, 1980, Pace had engaged in a number of unfair labor practices in violation of §§ 8(a)(1) or (3) of the Act. These included discharging employee Robert Kennedy on November 28 because of his activities on behalf of the Union; announcing on November 28, in order to induce employees to withhold their support for the Union, that the Company would increase its contribution toward employees' medical benefits;

threatening employees in early December with discharge, loss of profit sharing benefits, or plant closure if the Union were selected as the employees' bargaining representative; interrogating employees on December 10 regarding their union activities and sympathies; and refusing on and after February 27 to reinstate Kennedy and three of the striking employees to their former positions of employment. In addition the ALJ found that the Company had violated § 8(a)(5) of the Act by refusing to bargain with the Union on December 4. On the basis of the ALJ's findings, the Board issued its Order[1] requiring Pace principally (1) to cease and desist from the various unfair labor practices found by the ALJ and refrain from interfering in any other manner with its employees' exercise of rights granted them under the Act; (2) to reinstate and make whole the strikers whom Pace had refused to reinstate to their former jobs; and (3) to bargain with the Union with respect to rates of pay, wages, hours, and other terms and conditions of employment.

In opposition to the Board's petition for enforcement of its Order, Pace argues that it did not commit the unfair labor practices found by the ALJ and confirmed by the Board, and that in any event the Board's issuance of a bargaining order was unwarranted.

## DISCUSSION

Pace's challenges to the Board's conclusions that Pace violated §§ 8(a)(1) and (3) of the Act need not detain us long. The findings of the Board must be upheld if they are supported by substantial evidence in the record as a whole. § 10(e) of the Act, 29 U.S.C. § 160(e) (1976). Our review of the record reveals that there was substantial evidence to support the Board's findings and conclusions. To the extent that there was conflicting evidence, the ALJ resolved conflicts on the basis of his views as to the credibility of the witnesses.

---

1. The Board's Decision and Order modified in several respects the ALJ's decision and his recommended order by augmenting the ALJ's conclusions of law, modifying his proposed remedy, and setting forth various legal authorities not mentioned by the ALJ.

These views, and the conclusions derived from them, are entitled to particular respect. *NLRB v. Donald E. Hernly, Inc.,* 613 F.2d 457, 462 (2d Cir. 1980); *Amalgamated Local Union 355 v. NLRB,* 481 F.2d 996, 1004–05 (2d Cir. 1973). Accordingly, we enforce so much of the Order as requires Pace to cease and desist from engaging in the unfair labor practices directed against its employees, and to reinstate and make whole certain employees.

■ We have considerable difficulty, however, with the Order's requirement that Pace bargain with the Union. This portion of the Board's Order is apparently premised on the conclusion that the Company's unfair labor practices have made a fair election to determine whether a majority of the employees in the unit wish the Union to become their bargaining representative "improbable if not 'impossible.'" (Board's brief on appeal at 39 (quoting ALJ's decision at 21)). This conclusion may well not be justified, and it appears that it was not preceded by the kind of analysis that we require before enforcing so drastic an order. *See J.J. Newberry Co. v. NLRB,* 645 F.2d 148 (2d Cir. 1981).

In *J.J. Newberry* we reaffirmed the general principle that elections, and not bargaining orders, are the preferred remedy for employer misconduct during a union organizational campaign. *Id.* at 153 (citing *NLRB v. Jamaica Towing, Inc.,* 632 F.2d 208, 212 (2d Cir. 1980)). We refused, without prejudice, to enforce the Board's bargaining order in *J.J. Newberry,* absent a close analysis by the Board of the need for such an order:

> It is true that the improper grant of significant economic benefits to employees is often characterized as a "hallmark" unfair labor practice which will justify a bargaining order in the absence of mitigating circumstances or evidence showing that the conduct is not as serious as it may seem. [citation omitted] The mere presence of such a violation, however, does not automatically preclude a fair second election or mandate the issuance of a bargaining order. Circumstances

> may exist where grants of economic benefits, even combined with additional unfair labor practices, are insufficient to support a bargaining order. [citations omitted] Rather than react in knee jerk fashion to the presence of a hallmark violation, the Board must still analyze the nature of the misconduct and the surrounding and succeeding events in each case in an effort to assess the potential for a free and uncoerced election under current conditions.

*J.J. Newberry Co. v. NLRB, supra,* 645 F.2d at 153.

The ALJ in the present case did not "analyze the nature of the misconduct and the surrounding and succeeding events" to evaluate "the potential for a free and uncoerced election under current conditions" at Pace. He simply quoted at length from the decision of the Board in *J.J. Newberry Co.,* 249 N.L.R.B. 991, 993 (1980) (suggesting that certain "hallmark" violations of the Act automatically justify a bargaining order), *enforced in part, vacated and remanded in part,* 645 F.2d 148 (2d Cir. 1981), then listed certain of the unfair labor practices he had found, and stated conclusorily that Pace's "conduct in the aggregate would, in my opinion, make the holding of a fair and free election impossible." (ALJ's decision at 21.) The ALJ did not have the benefit of our decision in *J.J. Newberry,* since his decision preceded our opinion by some two months; hence he did not know that we would refuse enforcement of the bargaining order in the case on which he relied. The Board, however, should not have suffered from the same lack of knowledge; our decision refusing to enforce its bargaining order in *J.J. Newberry* was filed three months before the Board issued its Order in the present case. Unaccountably, the Board, while modifying the ALJ's conclusions and proposed order in other respects, *see* note 1 *supra,* simply adopted the ALJ's bargaining order recommendation without explanation or comment and without mentioning our decision in *J.J. Newberry.* Hence there is no evidence that the Board conducted in the present case the kind of analysis we mandated in *J.J. Newberry.*

Further, there is no reason to infer that the Board made such an analysis sub silentio, for the justifiability of a bargaining order in the circumstances of the present case is not obvious. The unfair labor practices mentioned by the ALJ as the basis for his conclusion that a fair election was impossible were the Company's promise of medical benefits, its threats to withdraw benefits, close the plant, or discharge employees, its interrogations of employees, and its refusal to reinstate four strikers. All but the last of these acts occurred between November 28 and the middle of December, i.e., early in the period of conflict. It is noteworthy that some two weeks after the occurrence of these unfair labor practices, fourteen or fifteen of the employees, far from being intimidated into suppressing their pro-Union views, were willing to express those views quite publicly: they went on strike. And they remained on strike for nearly two months. Indeed, the ALJ found that the strike was the employees' *response* to the Company's unfair labor practices. Surely the employees' strike—an act far more likely to have serious adverse consequences than a secret ballot vote—provides reason to question a facile conclusion that a fair election was "improbable if not 'impossible.'"

As we said in *J.J. Newberry,* "[t]he preferred remedy remains a new election. Only where there is a substantial danger that employees will be inhibited by the employer's conduct from adhering to the union should a bargaining order issue." 645 F.2d at 154. Accordingly we vacate the Board's bargaining order and remand the case so that the Board may analyze the likelihood of a fair and free election.

Finally, we note that Pace seeks to have the Board consider, in determining whether a fair election can be held, the fact that as of December 21, 1981, there were ten new employees in the 21-person bargaining unit. The Board responds that Pace's failure to raise the matter of employee turnover before the Board prevents us from reviewing it now. *See* § 10(e) of the Act; *Detroit Edison Co. v. NLRB,* 440 U.S. 301, 311 n.10, 99 S.Ct. 1123, 1129 n.10, 59 L.Ed.2d 333 (1979). We have not been influenced by the employee turnover argument in reaching our decision here. Nevertheless, having determined to remand because of the Board's failure to justify its bargaining order, we direct the Board to consider on remand whether changes in the Company's work force have made a bargaining order now inappropriate, even if one might have been appropriate at some earlier time. *See NLRB v. Jamaica Towing, supra,* 632 F.2d at 214–15; *NLRB v. General Stencils, Inc.,* 472 F.2d 170, 175 n.5 (2d Cir. 1972); *NLRB v. American Cable Systems,* 427 F.2d 446, 448–49 (5th Cir.), *cert. denied,* 400 U.S. 957, 91 S.Ct. 356, 27 L.Ed.2d 266 (1970).

The Order is enforced except to the extent that it requires Pace to bargain with the Union; the bargaining order is vacated and remanded. No costs.