NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

STAR COLOR PLATE SERVICE, DIVI-
SION OF EINHORN ENTERPRISES,
INC., Respondent,

Local One, Amalgamated Lithographers
of America, Intervenor.

No. 535, Docket 87–4122.

United States Court of Appeals,
Second Circuit.

Argued Jan. 6, 1988.

Decided March 30, 1988.

Martin H. Scher, Carle Place, N.Y., for respondent.

David A. Fleischer, N.L.R.B., Washington, D.C. (Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, Susan L. Williams, Supervisory Atty., N.L.R.B., Washington, D.C., of counsel), for petitioner.

Mark D. Risk, New York City (Michael F. O'Toole, Steven M. Stimell, Robinson, Silverman, Pearce, Aronsohn & Berman, New York City, of counsel), for intervenor.

Before VAN GRAAFEILAND,
WINTER and ALTIMARI, Circuit
Judges.

WINTER, Circuit Judge:

This petition raises the question of whether we should deny enforcement of a

bargaining order because of an egregious delay between the election and the certification of the union by the National Labor Relations Board. Because more than five years have elapsed between the certification election and the Board's order certifying the union, only a few of the employees who voted in the election are still in the bargaining unit. Nevertheless, we conclude that even where the delay in question is due to the Board's dilatory approach to its statutory responsibilities,[1] we must enforce the order.

## BACKGROUND

Respondent Star Color Plate Service, Division of Einhorn Enterprises, Inc. is a New York corporation engaged in lithographic production services. On August 29, 1980, Local One of the Amalgamated Lithographers of America filed a representation petition seeking to represent the lithographic production employees at Star Color's Jamaica, New York plant. A representation election was held on March 31, 1981. There were eleven uncontested votes, six in favor of Local One, five in favor of another union. Fifteen votes were challenged, fourteen by Local One and one by the Board.

On June 30, 1981, the Regional Director sustained Local One's challenges to seven votes, overruled one challenge,[2] and consolidated the remaining ballot challenges with unfair labor practice charges leveled by the union. On various dates between July 13, 1981 and January 18, 1982, a hearing was held before an administrative law judge ("ALJ"). On March 17, 1983, the ALJ sustained the challenges to the remaining seven ballots on the grounds that Star Color had deliberately "packed" the bargaining unit in order to dilute the union's strength in the election. Star Color filed timely exceptions with the Board. On April 28, 1986, more than five years after the election and almost three years after the ALJ's decision, the Board adopted the ALJ's recommendation and certified Local One as the bargaining representative. On May 20, 1986, Star Color moved the Board to reconsider and/or to reopen the record to show the high turnover among the employees in the bargaining unit. On June 19, 1986, the Board denied the motion as lacking in merit.

Local One had originally requested that the company bargain with it in May 1986, but the company refused because of the motion for reconsideration. After the denial of the motion, Local One again requested that Star Color bargain. Star Color again refused. The Board issued a complaint alleging a refusal to bargain in violation of Sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5) (1982). On November 24, 1986, the Board granted summary judgment against Star Color. The Board specifically noted that passage of time and employee turnover did not create sufficiently "special" or "unusual" circumstances to require the Board either to reexamine its decision made in the representation proceeding or to relieve the company of its obligation to bargain with the union.

## DISCUSSION

Star Color argues that the Board's order should not be enforced because the passage of time between the certification election and the high turnover of employees in the bargaining unit have cast doubt upon the majority status of Local One. According to Star Color, enforcing the order would undermine employee freedom of choice and thereby frustrate rather than effectuate the policies of the Act. We believe that frustration of the policies of the Act is an inevitable result of the egregious administrative delay in this case no matter how we rule. Because we conclude that fewer policies are frustrated by enforcement than by nonenforcement, we choose the former.

▮▮▮ A union that has been certified by the Board as a bargaining representative after a representation election normally en-

---

1. This is not an isolated instance of delay. *See NLRB v. Synergy Gas Corp.*, 843 F.2d 1510 (2d Cir.1988), filed this day.

2. On review, the Board reinstated the challenge to this ballot.

joys an irrebuttable presumption of majority status for one year following the certification, even if the union no longer enjoys majority support. *Brooks v. NLRB,* 348 U.S. 96, 104, 75 S.Ct. 176, 181–82, 99 L.Ed. 125 (1954); *NLRB v. Accurate Web, Inc.,* 818 F.2d 273, 275 (2d Cir.1987) (per curiam). If the employer refuses to bargain with the certified union, the Board may extend the certification year so that it does not commence until the employer begins to bargain in good faith. *NLRB v. All Brand Printing Corp.,* 594 F.2d 926, 929 (2d Cir.1979).

■■■ There are, however, "unusual circumstances" in which the irrebuttable presumption will not apply, for example, where a certified union has dissolved and no longer exists, *Public Serv. Elec. & Gas Co.,* 59 N.L.R.B. 325, 327 (1944), or where a collective bargaining agreement with a duration of less than one year has expired, *Ludlow Typograph Co.,* 108 N.L.R.B. 1463, 1465 (1954). Apparent loss of majority status and delay in certification do not normally constitute "unusual circumstances." In *NLRB v. Patent Trader, Inc.,* 426 F.2d 791 (2d Cir.1970) (in banc), there was both passage of time and "repudiation" of the union by a majority of the employees. Nevertheless, a unanimous in banc court held that "it is error to refuse to enforce a bargaining order when it is conceded that there has been a Board election, the Union was duly certified, and the Company thereafter refused to bargain in good faith." *Id.* at 792. We reached this conclusion because "[r]equiring still another Board election in such a situation undermines the central purpose of the National Labor Relations Act, since it gives an employer an incentive to disregard its duty to bargain in the hope that over a period of time a union will lose its majority status." *Id.*

In *Glomac Plastics, Inc. v. NLRB,* 592 F.2d 94 (2d Cir.1979), almost six years had passed since the original certification, and four and one-half of those years were attributable to the Board's delay. *Id.* at 101. Glomac made the argument now advanced by Star Color that the bargaining order should not be enforced because enforcement would deny the employees the right

freely to choose their own representative. *Id.* While we found this argument to have "considerable appeal" "[a]t first blush," we rejected it in favor of the rule and rationale of *Patent Trader. Id.* at 101–02. Nevertheless, to be "fair to all concerned" we withheld enforcement of the bargaining order for sixty days and remanded to the Board to give it a chance to reconsider its ruling. On remand, the Board accepted as accurate the company's "principal claims of substantial employee turnover in the unit and/or abandonment of the unit by the Union." *Glomac Plastics, Inc. v. NLRB,* 600 F.2d 3, 4 (2d Cir.1979). Nevertheless, the Board reaffirmed its bargaining order, and we enforced. *Id.*

We find Star Color's efforts to distinguish *Patent Trader* unconvincing. Several cases cited by the company are inapposite because they involved bargaining orders issued where there had never been a representation election, *see, e.g., NLRB v. Pace Oldsmobile, Inc.,* 739 F.2d 108, 110 (2d Cir.1984); *NLRB v. Marion Rohr Corp.,* 714 F.2d 228, 230 (2d Cir.1983), or the union had lost the election, *NLRB v. Knogo Corp.,* 727 F.2d 55, 58 (2d Cir.1984).

Only two cases have come to our attention in which passage of time and possible employee turnover justified a refusal to enforce a bargaining order within a post-election certification year. *NLRB v. Connecticut Foundry Co.,* 688 F.2d 871 (2d Cir.1982) and *NLRB v. Nixon Gear, Inc.,* 649 F.2d 906 (2d Cir.1981). In both, however, we refused to enforce the bargaining order because the Board had abused its discretion when it failed to hold hearings on prima facie valid post-election challenges by the employers, which, if upheld, would have required the setting aside of the representation elections. *Connecticut Foundry,* 688 F.2d at 876–77; *Nixon Gear,* 649 F.2d at 912. Passage of time and employee turnover were relevant in those cases because our only options were remanding to the Board and thus extending the delay or outright denial of enforcement. We did not have, as we have here, the option of enforcing the bargaining order. Moreover, delay and turnover supported denial in *Connecticut Foundry* and

*Nixon Gear* because fading memories and unavailable witnesses might preclude the possibility of a fair hearing and a reliable determination of the challenges to the election. *Connecticut Foundry*, 688 F.2d at 881; *Nixon Gear*, 649 F.2d at 914.

■ As a fallback position, Star Color argues that even if this case is controlled by *Patent Trader*, we should follow the procedure in *Glomac Plastics* and remand to the Board for further consideration rather than enforce the order. We decline to do so. It is clear that the Board has already considered and rejected Star Color's argument that changed circumstances on account of passage of time and employee turnover constituted "unusual circumstances" relieving it of the duty to bargain in good faith during the certification year. Thus, a remand would be an "idle and useless formality," *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 1430 n. 6, 22 L.Ed.2d 709 (1969) (plurality opinion), further increasing the already egregious delay in this case.[3] Indeed, we believe it now clear that the Board will never view its own predictable delay as "unusual circumstances" calling for a new election.

We realize that our decision may impose a bargaining representative that is not wanted by a majority of employees and that this result is contrary to the policies of the Act. This result can be mitigated by the Board's giving actual notice to the current employees of their statutory right to petition for a decertification election. *Patent Trader*, 426 F.2d at 793. Our enforcement order will become effective when such notice is given. Were we to deny enforcement and order another election, we would merely be sending the parties back to the Board's glacial processes with no assurance that years from now a certification based on a second election will not be challenged on exactly the same grounds. That result would similarly undermine policies of the Act. We therefore follow *Patent Trader* in the hope that enforcement will marginally reduce the incentive of employers to take advantage of the Board's inexcusably slow processes.

Enforced.

---

**3.** We reject the company's attempts to raise for the first time in its reply brief the question of whether the Board erred by refusing to count certain ballots cast in the representation election. While this issue was raised in the original representation proceeding, it was not raised in the unfair labor practice proceeding. Appellate review of this issue is therefore barred under Section 10(e) of the Act, 29 U.S.C. § 160(e) (1982). Furthermore, the company's subsequent failure to present this claim in its original brief before this court provides an independent ground under Fed.R.App.P. 28(a)(2) for our refusal to hear this claim. *See Amoco Overseas Oil v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648, 653 n. 3 (2d Cir.1979).