NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

KOENIG IRON WORKS, INC. and
Roman Iron Works, Inc.,
Respondents.

Nos. 606, 607, Dockets 87–4134, 87–4136.

United States Court of Appeals,
Second Circuit.

Argued March 1, 1988.

Decided Aug. 26, 1988.

Stanley Israel, New York City, for respondents.

Fred L. Cornnell, N.L.R.B., Washington, D.C. (Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Assoc. Gen. Counsel, Aileen A. Armstrong, Deputy Assoc. Gen. Counsel, Susan L. Williams, Supervisory Atty., N.L.R.B., Washington, D.C., on the brief), for petitioner.

Sidney L. Meyer, New York City, submitted an amicus curiae brief for Local 810, International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America.

Before OAKES and NEWMAN,
Circuit Judges, and KEENAN, District
Judge.*

JON O. NEWMAN, Circuit Judge:

This application for enforcement of bargaining orders issued by the National Labor Relations Board requires us to consider the significance of the passage of time—in this case twelve years—upon the discretion of the Board to issue a bargaining order in the absence of a determination of a union's majority status by an election. Though recognizing that the Board has broad discretion in fashioning appropriate relief and that no fixed interval of time necessarily precludes a bargaining order in all cases where majority status has not been determined by an election, we nevertheless conclude that the Board has exceeded the bounds of reasonable discretion under the circumstances of this case and therefore deny enforcement.

Facts

For many years prior to 1975, respondents Koenig Iron Works, Inc. ("Koenig") and Roman Iron Works, Inc. ("Roman") had been parties to collective bargaining agreements with Shopmen's Local No. 455, International Association of Bridge, Structural and Ornamental Iron Workers, AFL–CIO ("Local 455"). These contracts had been negotiated for the companies by their multi-employer bargaining group, the Independent Association of Steel Fabricators. The last agreement expired on June 30, 1975. Roman and Koenig then signed agreements with Local 810, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,

* The Honorable John F. Keenan of the United States District Court for the Southern District of New York, sitting by designation.

AFL–CIO ("Local 810"). That action led to the Board's first decision in this dispute, reported at 231 N.L.R.B. No. 31 (1977), *enforcement granted in part and denied in part, NLRB v. Independent Association of Steel Fabricators, Inc.*, 582 F.2d 135 (2d Cir.1978), *cert. denied*, 439 U.S. 1130, 99 S.Ct. 1049, 59 L.Ed.2d 91 (1979).

Thereafter, on September 30, 1980, the Board issued two orders, reported at 252 N.L.R.B. 904 and 252 N.L.R.B. 922, which, among other things, required Roman and Koenig to abrogate their agreements with Local 810 and bargain with Local 455. We enforced those orders on June 7, 1982. *NLRB v. Koenig Iron Works, Inc.*, 681 F.2d 130 (2d Cir.1982). In doing so, we considered the appropriateness of a bargaining order in light of the passage of time that had then occurred—six years from the expiration of the last bargaining agreement to the entry of the Board's bargaining orders. Though sharing the Board's view that the passage of time to that point was "unfortunate," *id.* at 144, we deferred to the Board's choice of a remedy.

Bargaining between Local 455 and Roman and Koenig resumed in August 1982 and continued until January 1984. In the course of those negotiations, the companies granted unilateral wage increases, actions found by the Board to violate section 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5) (1982). *Roman Iron Works, Inc.*, 275 N.L.R.B. 449 (1985); *Koenig Iron Works, Inc.*, 276 N.L.R.B. 811 (1985). Those decisions were enforced by entry of consent judgments. Local 455 requested a resumption of bargaining on November 20, 1984. Bargaining resumed at sessions in February and March 1985 and terminated on March 29, 1985, when the companies took the position that they no longer had an obligation to bargain with Local 455. On various dates in 1984 and 1985 both of the companies granted wage increases without notifying or bargaining with Local 455. Roman granted unilateral wage increases on October 18 and November 8, 1984; Koenig granted wage increases in the last quarter of 1984, in the summer and fall of 1985,

and in December 1985. In addition, Koenig declined to respond to an October 30, 1985, request by the Union for information concerning newly hired employees.

These actions led to renewed charges of unfair labor practices that are the subject of the pending enforcement petition. The Board found that both Roman and Koenig had violated section 8(a)(1) and (5) by withdrawing recognition from Local 455 and by changing employees' wage rates without notifying or bargaining with the Union. Koenig was also found to have committed an unfair labor practice by refusing the Union's request for information relevant to collective bargaining. As relief, the Board's orders require Roman and Koenig to bargain with Local 455 upon the Union's request, to cancel the unilateral changes upon the Union's request, and to post appropriate notices. Koenig is also directed to furnish the requested information.

### Discussion

It has long been established that a bargaining relationship established by Board certification following an election is irrebuttably presumed to continue for one year, and thereafter the union is entitled to a rebuttable presumption of continuing majority status. *Fall River Dyeing & Finishing Corp. v. NLRB*, — U.S. —, 107 S.Ct. 2225, 2233, 96 L.Ed.2d 22 (1987); *NLRB v. Windham Community Memorial Hospital*, 577 F.2d 805, 810–11 (2d Cir. 1978). When an employer voluntarily recognizes a union, the period of an irrebuttable presumption of a continuing majority lasts for "a less definite 'reasonable time.'" *Royal Coach Lines, Inc. v. NLRB*, 838 F.2d 47, 51 (2d Cir.1988) (quoting *NLRB v. Cayuga Crushed Stone, Inc.*, 474 F.2d 1380, 1383 (2d Cir.1973)). The distinction rests in part on the principle that majority status established in an election—"[t]he clearly preferred remedy," *NLRB v. Marion Rohr Corp.*, 714 F.2d 228, 230 (2d Cir.1983)—is entitled to be regarded as especially enduring. Reflecting this view, the Supreme Court has rejected a contention that the passage of time between an unfair labor practice and a

Board decision requiring bargaining should defeat enforcement of the order where the union's majority status had been ascertained in an election. *NLRB v. Katz,* 369 U.S. 736, 748 n. 16, 82 S.Ct. 1107, 1114 n. 16, 8 L.Ed.2d 230 (1962). Even the seeming flat rejection of that contention was made in a case where the Board's order issued within just four years of the Board's certification of the election results. *See NLRB v. Katz,* 289 F.2d 700, 701 (2d Cir. 1961) (date of Board order); *NLRB v. Katz, supra,* 369 U.S. at 739, 82 S.Ct. at 1109 (date of certification). This Circuit also has enforced bargaining orders after a union has won an election, despite considerable delays. *Glomac Plastics, Inc. v. NLRB,* 592 F.2d 94 (2d Cir.1979) (six-year interval after certification); *NLRB v. Patent Trader, Inc.,* 426 F.2d 791 (2d Cir.1970) (in banc) (interval of no more than four years after certification). *See also NLRB v. Staub Cleaners, Inc.,* 418 F.2d 1086, 1089 (2d Cir.1969) (relying on the "stark words of *Katz*" to enforce a bargaining order where five years had elapsed between an election and a bargaining order).

By contrast, where a union's majority status has not been ascertained by a valid election, we have on occasion declined to enforce bargaining orders, *e.g., NLRB v. Pace Oldsmobile, Inc.,* 739 F.2d 108 (2d Cir.1984); *NLRB v. Marion Rohr Corp., supra.* We recently relied explicitly on the significance of ascertaining majority status by election in rejecting an objection to a bargaining order because it was entered more than five years after the election. *NLRB v. Star Color Plate Service, Division of Einhorn Enterprises, Inc.,* 843 F.2d 1507, 1509 (2d Cir.1988). The same point was expressed in *Patent Trader,* where we enforced a bargaining order despite the company's preference for a new election: "The choice here is not between a bargaining order or an election in the first instance, but between requiring two Board elections rather than just the one already held." 406 F.2d at 792. Concededly, neither *Pace Oldsmobile* nor *Marion Rohr* is strong authority for declining to enforce a bargaining order here because majority status had never been validly ascertained

in those cases, whereas the original voluntary recognition extended to Local 455 by Roman and Koenig created at least for a reasonable time thereafter a rebuttable presumption of majority status. But the emphasis in *Patent Trader* and *Star Color* on a prior election provides an indication that the Board's authority to order bargaining after an extended time period is at some point circumscribed where majority status has not been determined by an election.

The significance of the passage of time was previously urged upon us in 1982 in this very litigation. At that time six years had elapsed from the expiration of the last collective bargaining agreement in 1975 to the issuance in 1981 of the Board orders for which enforcement was then sought. With some indication of reluctance, we enforced the Board's orders, relying on *Katz* and our own *Staub Cleaners.* We also relied on an "implicit endorsement" of the appropriateness of deferring to the Board's choice of remedy in *Charles D. Bonanno Linen Service, Inc. v. NLRB,* 454 U.S. 404, 102 S.Ct. 720, 70 L.Ed.2d 656 (1982), where the Supreme Court had upheld the Board's order despite a six-year interval. The "endorsement" was surely no better than "implicit" in *Bonanno Linen Service* since the opinion makes no reference to the passage of time and the order enforced did not require the company to bargain but rather to sign an agreement negotiated by a multi-employer group from which it had unlawfully withdrawn.

The issue now is whether a different result is called for by the passage of the truly extraordinary interval of twelve years from the expiration of the collective bargaining agreement and the Board's bargaining order. We think it is. No case, so far as we are aware, has enforced a bargaining order after such a lapse of time in the absence of an initial certification following an election. Moreover, the companies had a considerable basis for doubting the current majority status of Local 455. Whether the Board would have been entitled to conclude after an election that these doubts were not sufficiently supported by

evidence to overcome the presumption of majority status is a matter we need not decide. But the evidence placing in issue the Union's continuing majority status is at least sufficient to be weighed in our assessment of whether the undue passage of time has rendered it unreasonable to accord Local 455 a continuing presumption of majority status.

We are mindful that employers must not be given an incentive to stonewall negotiations in the hope that the passage of time will automatically insulate them from a bargaining order. But these employers have hardly stonewalled. They have engaged in a protracted series of bargaining sessions lasting over a period of years. Moreover, even in the context of bargaining orders issued in the absence of an election to ascertain majority status, we do not intend to establish an automatic time limit beyond which an election is required. Though we would not expect to see many cases where the interval equals or exceeds the twelve years in this case, we afford employers no assurance that obstructionism lasting for such a period will necessarily be rewarded. Rather we conclude that under the circumstances of this case where extensive bargaining has occurred and doubts about majority status are substantial, the passage of such a long period of time renders a bargaining order beyond the Board's discretion, in the absence of an election. Since the bargaining requirements are central to the orders for which enforcement is sought, the unavailability of a bargaining order without an election makes it appropriate to deny enforcement of the orders in their entirety.

ENFORCEMENT DENIED.

OAKES, Circuit Judge (dissenting):

I dissent.

In my view the decision gives employers an incentive to stonewall in bargaining sessions and rewards rather than punishes them for the type of continued violations of the Act that undermine the entire collective bargaining process.

The majority's reference to a twelve-year interval between the last determination of Local 455's majority status and the present bargaining orders is misleading. Less than six years ago, in 1982, our court determined that Koenig had established neither the actual loss of majority status of Local 455 nor a rational, good faith doubt as to that status. *NLRB v. Koenig Iron Works, Inc.*, 681 F.2d 130, 138–39 (2d Cir.1982) (*Koenig I*). In a lengthy opinion by Judge Friendly, enforcing bargaining orders, the court noted the Board's reliance on the rationale of *Glomac Plastics, Inc.*, 241 N.L.R.B. 348, *enforced*, 600 F.2d 3 (2d Cir. 1979), that a bargaining order and not an election was " 'the only effective remedy' " for the refusal to bargain. 681 F.2d at 144 (quoting *Glomac Plastics*, 241 N.L.R.B. at 348). The court also found it neither arbitrary nor capricious for the Board to have concluded that, despite the passage of six years from the commission of the unfair labor practice there, "the need to deter employer misconduct mandated the issuance of bargaining orders." 681 F.2d at 145. That same need mandates the same result today, and the passage of time does not require otherwise.

Here only three to four years have actually elapsed since the employers several times committed one of the most pernicious unfair labor practices, namely, unilateral wage increases. *See, e.g., NLRB v. Katz*, 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962) (employer's unilateral changes in conditions of employment under negotiation circumvents duty to negotiate and frustrates objectives of Act); *NLRB v. Consolidated Rendering Co.*, 386 F.2d 699, 704 (2d Cir.1967) (unilateral changes are so disruptive of collective bargaining relationship as to be per se unfair labor practices); *see also Carpenter Sprinkler Corp. v. NLRB*, 605 F.2d 60, 64–65 (2d Cir.1979) (clear impasse must exist to warrant unilateral changes).[1] Moreover, only three to four years have elapsed since the employers bargained with Local 455, "[h]aving voluntarily determined that the Union[ ]

1. The majority cites nothing in the record to suggest that the Board's finding of no impasse was not supported by substantial evidence.

had a majority status." *NLRB v. Cayuga Crushed Stone, Inc.*, 474 F.2d 1380, 1384 (2d Cir.1973).[2] Once Koenig and Roman recognized Local 455 as the representative of their employees, they were not free shortly thereafter to withdraw recognition from the union unilaterally. *See id.* At the very least, a rebuttable presumption of continuing majority support existed as to the incumbent union. The majority specifies no evidence which would cast doubt upon the conclusions of the Board that the employers violated the Act by withdrawing recognition from the Union in March of 1985[3] and that Koenig further violated the Act by refusing the Union's request for information.

For the first time this court permits employers whose extensive and persistent misconduct already has resulted in protracted litigation culminating in enforcement of Board orders to obtain by continuation of the misconduct a delay that thereby absolves them from their statutory duties. This flies in the face of our decisions in, *e.g., NLRB v. Star Color Plate Service, Division of Einhorn Enterprises, Inc.*, 843 F.2d 1507 (2d Cir.1988), *petition for cert. filed*, 57 U.S.L.W. 3021 (U.S. July 19, 1988), and *NLRB v. Patent Trader, Inc.*, 426 F.2d 791 (2d Cir.1970) (en banc). It is a clear signal to any employer that it is all right "to disregard its duty to bargain in the hope that over a period of time a union will lose its majority status," *id.* at 792; *see also Glomac Plastics*, 241 N.L. R.B. at 348, *quoted in Koenig I*, 681 F.2d at 144 (identical language), and that, if done sufficiently late in the game, the granting of unilateral wage increases will be winked at by the court.

Accordingly I dissent.

**2.** The ALJ noted in his opinion (adopted by the Board) that each company "resumed bargaining with the Union [in 1984–85] under circumstances which ... leave no doubt that it believed itself to be dealing with the authorized representative of its employees in the bargaining unit."

**3.** Indeed, the ALJ specifically found that Roman had offered "no evidence to show that a change

[in Local 455's majority status] had truly occurred." Moreover, the employers' arguments and evidence supporting their alleged good faith doubt of the union's majority status were presented and rejected as insufficient by this court in *Koenig I. See* 681 F.2d at 138, 139 & n. 11, 141 & n. 16. *See also NLRB v. Windham Community Mem. Hosp.*, 577 F.2d 805, 813–14 (2d Cir.1978).