NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

VANTRAN ELECTRIC CORPORATION,
Respondent.

No. 77–2088.

United States Court of Appeals,
Seventh Circuit.

Argued May 22, 1978.

Decided Aug. 9, 1978.

Jay E. Shanklin, N.L.R.B., Washington, D. C., for petitioner.

Gerald Tockman, St. Louis, Mo., for respondent.

Before PELL and WOOD, Circuit Judges, and HARPER, Senior District Judge.*

PELL, Circuit Judge.

At issue in this application for enforcement is whether the National Labor Relations Board (Board) exceeded its remedial authority in ordering Vantran Electric Corporation (employer) to bargain with Local 50, International Brotherhood of Teamsters (union), for an extended certification year as a remedy for the employer's withdrawal of recognition four and one-half months after it entered a settlement agreement with the union.

The facts are essentially undisputed. On February 6, 1975, the union won a Board representation election, and on February 14, 1975, the Board certified the union as bargaining representative of the employer's production and maintenance workforce. On March 25, 1975, after two bargaining sessions, the union called a strike which continued until March 6, 1976. In April 1975, the employer filed a suit against the union and its officers and representatives for damages resulting from violence, vandalism, and related misconduct of union members during the strike.

In September 1975, while the employer's state court damage action was pending, the union filed unfair labor practice charges against the employer. The Board then issued a complaint against the employer charging violations of §§ 8(a)(5) and (1) for bad-faith bargaining since March 18, 1975, and for increased benefits given to strike replacements. The union filed additional charges on March 5, 1976, and on March 11, 1976, the Board issued a consolidated complaint adding the charge that the employer violated § 8(a)(3) by refusing to reinstate 56 named strikers following their unconditional offers to return to work.

The employer and the union signed an out-of-Board settlement agreement which provided:

1. The Company will dismiss its Complaint in No. 75–CH–6 pending in the Circuit Court of Fayette County, Illinois

---

* Senior District Judge Roy W. Harper of the Eastern and Western Districts of Missouri is sitting by designation.

and all claims for damages against the Union or any of its officers.

2. The Union will seek, and do everything possible to cause, withdrawal and dismissal of the charges and Complaint in Cases Nos. 14–CA–8783 and 14–CA–9143 and all charges and appeals against the Company or any of its officers.

3. As soon as reasonably possible following the events in 1 and 2 above, the Union will provide to the Company a list of those employees of the Company who went out on strike on or after March 25, 1975 and who desire to return to active work for the Company; at the same time, the Company will provide to the Union a list of such striking employees who have informed the Company that they do not desire to return to such active work.

4. Upon request, the Company will provide to and review with the Union all documents available to the Company showing that for the reasonably foreseeable future the Company's manning requirements will be for not more than twenty-five (25) employees.

5. The Company will reinstate to active work, from those desiring the same as shown by the lists referred to in 3 above and according to seniority and ability to do the work, eleven (11) former strikers to take the place of the eleven (11) employees of the Company hired for the first time on and after March 25, 1975.

6. The Company will maintain a list of those former strikers designated on the lists referred to in 3 above but not reinstated to active work under 5 above and, by seniority and ability to do the work, will offer reinstatement to active work to such former strikers as and when job openings occur, provided however, that such former strikers must keep the Company informed as to their desire to return to active work and where they can be reached for recall not less than every six (6) months.

7. Upon request, the Company will engage in collective bargaining negotiations with the Union.

8. The Company and the Union, each, respectively waives and releases the other from all claims and complaints of whatsoever nature.

Thereafter, the state court dismissed the damage suit and the Regional Director of the Board approved the union's withdrawal of the charges and dismissed the consolidated complaint. The employer began bargaining with the union. On August 6, 1976, after four bargaining sessions, the employer sent the union a letter stating that the union had lost its majority support and that the employer refused to recognize or negotiate with the union any further. There is no dispute that the union had lost its majority support among the unit employees. The only issue is whether the employer could withdraw recognition four and one-half months after the settlement agreement.

On the basis of these undisputed facts, the Administrative Law Judge (ALJ) concluded that the employer did not violate the Act when it withdrew recognition from the union. The Board, one member dissenting, disagreed and ordered the employer to bargain for a period of six and one-half months. It reasoned that since the employer had a duty to bargain with the union for one year after certification and since the employer allegedly refused to bargain one month after certification,[1] the Board extended the certification year by eleven months. The Board credited the employer with bargaining in good faith for four and one-half months after the settlement agreement leaving six and one-half months to complete the extended certification year.

■■■ The law is clear that an employer cannot withdraw recognition from a union, even if the union no longer has majority support, for one year after the union is certified. *Brooks v. National Labor Relations Board,* 348 U.S. 96, 104, 75 S.Ct. 176, 99 L.Ed. 125 (1954). After the certification

---

1. The § 8(a)(5) charge, dismissed by the Board after the settlement agreement, alleged that on or about March 18, 1975, and thereafter, the employer negotiated with the union in bad faith.

year, the presumption of the union's majority status continues, but it is rebuttable. If the employer has a reasonably based good faith doubt as to the union's majority status, it may justifiably refuse to bargain. *Id.* The major purpose of the irrebuttable presumption of majority status for the year following certification is to give the union ample time to carry out its mandate without feeling pressured to produce instantaneous results. *Id.*

Similar reasoning was employed to apply the doctrine to settlement agreements. In *Poole Foundry & Machine Co. v. National Labor Relations Board,* 192 F.2d 740 (4th Cir. 1951), *cert. denied,* 342 U.S. 954, 72 S.Ct. 626, 96 L.Ed. 709 (1952), the employer and the union entered into a Board-approved settlement in which the union agreed to withdraw unfair labor practice charges it had filed and the employer agreed to bargain with the union. Approximately four months later, the employer refused to bargain with the union because 64 of the 66 employees filed a decertification petition. The Fourth Circuit enforced the Board's conclusion that the employer violated §§ 8(a)(5) and (1) by refusing to bargain for a reasonable time after entering the settlement agreement.

In the present case, however, we must decide whether the Board may apply the *Poole* rationale to order the employer to bargain for an extended certification year on the basis of an out-of-Board settlement agreement. Although the Board has applied the *Poole* rationale to out-of-Board settlements, *Ted Mansour's Market,* 199 N.L.R.B. 218 (1972), the only court that has addressed this issue is the Fifth Circuit in *Pride Refining, Inc. v. N.L.R.B.,* 555 F.2d 453 (5th Cir. 1977). That case involved an employer which was charged by the union with refusing to bargain during the certification year. Before the charge was litigated, the employer entered into an agreement with the union in which the union agreed to withdraw its unfair labor practice charges and the employer agreed to maintain in effect certain wage levels and benefits and to bargain with the union over any changes in these terms. Subsequently, the employer

withdrew recognition of the union and refused to bargain on the ground that it had a good faith doubt as to the union's majority support. The Board, using the *Poole* rationale, ordered the employer to bargain. The Fifth Circuit denied enforcement of that order, however, on the ground that the agreement between the employer and the union was really a collective bargaining agreement and not a settlement agreement.

■ The critical issue which emerges in the present case is whether the agreement was a valid settlement agreement. Although we are willing to approve an extension of the Board's remedial powers to enforce bargaining provisions of totally private, out-of-Board settlement agreements, we perceive the need for some standards in this area. We distinguish between Board-approved and out-of-Board settlements because, as the court stated in *Poole,* a Board-approved settlement "clearly manifests an administrative determination by the Board that some remedial action is necessary to safeguard the public interests intended to be protected by the National Labor Relations Act." *Poole Foundry & Machinery Co. v. N.L.R.B., supra* at 743. In out-of-Board settlements, on the other hand, the Board has had no opportunity to determine whether any remedial action is appropriate. It merely acquiesces in the request of the charging party to withdraw charges and may do so without knowledge of the settlement agreement or all pertinent background facts. Moreover, if the Board is involved in the settlement, which includes a bargaining provision in exchange for withdrawal of a § 8(a)(5) charge, the parties are more likely to have intended the scope of that bargaining duty to satisfy Board standards.

■ For these reasons, out-of-Board settlements should be carefully analyzed to determine the intended scope of the bargaining provision. An important factor in this analysis is whether the employer's agreement to bargain was a *quid pro quo* for the union's agreement to withdraw its § 8(a)(5) charge. If it was, the parties

probably intended that the employer fulfill a bargaining obligation that it allegedly violated, which would, for example, justify bargaining for an extended certification year. If it was not, the intent of the parties would be less clear and the burden would be on the Board in seeking enforcement to show that the scope of the bargaining obligation was broader than the literal language of the provision indicated.

We find ourselves in agreement with the company's contention that the Board has applied its remedy of certification extension in this case solely on the basis of the fact that § 8(a)(5) charges were filed against the company during the certification year and subsequently withdrawn pursuant to a private non-Board agreement. As the company points out, no effort was made by the General Counsel to introduce any evidence relating to the factual basis of the withdrawn charges. In sum, there was no supporting evidentiary basis for the Board's finding that the agreement provision for bargaining settled the outstanding charges and thereby constituted a "typical settlement agreement" as to that issue.

■ In the present case, although the union's primary concession was the withdrawal of the unfair labor practice charges, the employer's primary concession appears to have been its dismissal of the state court damage action. Indeed, the ALJ so found. He stated that the union "was primarily interested in the dismissal of the damage suit, . . . [and] [u]nder these circumstances, I find that the March 22 non-Board settlement between the Company and the Union did not operate as a settlement of the pending Board cases, . . . ." Clearly then, the employer's agreement to bargain was not a *quid pro quo* for the union's agreement to withdraw its § 8(a)(5) charge but at best was only incidental thereto. Furthermore, nothing in the settlement agreement suggests that the parties intended bargaining for an extended certification year or, indeed, for any particular time period, thus forcing the employer to bargain with the union even if the union thereafter lost its majority support. The settle-

ment agreement states simply that the employer will bargain with the union upon request.

■ In these circumstances, we are of the opinion that the Board exceeded its remedial powers by ordering the employer to bargain for an extended certification year on the basis of this out-of-Board settlement. We appreciate that the Board has wide discretionary authority to fashion remedies. *See Fibreboard Corp. v. N.L.R.B.,* 379 U.S. 203, 216, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964). The Board's attempt to extend that authority to a case such as this, however, impairs the ability of unions and employers to settle their disputes without government intervention and without the Board's interpretative gloss on private settlements which may subvert the parties' original intent.

■ If the Board perceived the need to intervene to protect the public interest, one of its important responsibilities, the appropriate time for such intervention was when the union requested it to withdraw charges and dismiss the complaint against the employer. At that time the Board could have refused to dismiss the complaint unless the settlement agreement was amended to include a bargaining obligation for an extended certification year. The Board's decision to forego intervention at that time left the interpretation of that agreement primarily to the language and intent of the parties.

For these reasons, we deny enforcement of the Board's order.

ENFORCEMENT DENIED.