**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ACCURATE WEB, INC, Respondent.**

**Local One, Amalgamated Lithographers of America, Intervenor.**

**No. 759, Docket 86–4145.**

United States Court of Appeals, Second Circuit.

Argued Jan. 30, 1987.
Decided May 6, 1987.

Frederick D. Braid, Mineola, N.Y. (Rains & Pogrebin, P.C., Mineola, N.Y., of counsel) for respondent.

John D. Burgoyne, N.L.R.B., Washington, D.C. (W. Christian Schumann, Supervisory Atty., Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., of counsel) for petitioner.

Mark D. Risk, New York City (Michael F. O'Toole, Robinson, Silverman, Pearce, Aronsohn & Berman, New York City, of counsel) for intervenor.

Before CARDAMONE, WINTERS and PRATT, Circuit Judges.

PER CURIAM:

Pursuant to § 10(e) of the National Labor Relations Act (Act), 29 U.S.C. § 160(e) (1982), the National Labor Relations Board (Board), as petitioner, seeks enforcement of its order issued against respondent Accurate Web, Inc., (Employer), compelling recognition of intervenor, Local One, Amalgamated Lithographers of America, (Union). We grant enforcement.

I

In June 1982 a Board director certified the Union as the exclusive collective bargaining representative of the Employer's production and maintenance employees. The Board denied the Employer's request for review of the certification. In order to test the certification the Employer then refused to bargain with the Union. In response, the Union filed an unfair labor practices (ULP) charge with the Board alleging a § 8(a)(5) violation of the Act. In March 1983 the Board sustained the charge and, as a remedy, extended the one year certification period to begin on the date the Employer commenced to bargain in good faith. 266 NLRB 487.

Between the commencement and conclusion of the above action, the Union filed other ULP charges against the Employer. A hearing on the complaint was adjourned to allow the parties time to negotiate a settlement. In May 1983 the parties entered into a non-Board settlement agreement in which the Union agreed to withdraw all ULP charges and to seek vacatur of the above NLRB decision. In return, the Employer agreed, inter alia, to bargain in good faith with the Union and not to appeal the NLRB's decision. The Board agreed to the withdrawal and vacated its decision in July 1983.

After the withdrawal and vacatur, the parties engaged in good faith negotiations for approximately nine and a half months. In June 1984 a majority of the employees filed a decertification petition with the Board and, as a result, the Employer withdrew its recognition of the Union. In July 1984 a Board director, without a hearing, dismissed as untimely the decertification petition. The director interpreted the settlement agreement as extending the certifi-

cation period from August 1983 to August 1984 and hence concluded that the petition could not be brought before the certification period expired. In November 1984 the Board affirmed the director's decision.

In order to obtain review of the decertification dismissal, the Employer thereafter refused to bargain with the Union. In response, the Union filed another § 8(a)(5) action with the Board. In September 1985 an ALJ held that the decision in the decertification proceeding controlled the issue before it under the NLRB's administrative *res judicata* doctrine. He also held in the alternative that the non-Board settlement agreement had extended the certification year. The Board adopted the ALJ's opinion in April 1986 and ordered the Employer to bargain in good faith with the Union. When the Employer refused, the Board brought this enforcement action.

## II

■ An employer cannot withdraw recognition from a certified union for a reasonable time—usually a one year period—even if the union no longer has majority employee support. *Brooks v. NLRB*, 348 U.S. 96, 103–04, 75 S.Ct. 176, 181–82, 99 L.Ed. 125 (1954). If the employer withdraws recognition and refuses to bargain in good faith during the insulated certification year, the Board has the power to extend the certification period as a remedy for the § 8(a)(5) violation. *NLRB v. All Brand Printing Corp.*, 594 F.2d 926, 929 (2d Cir. 1979). The extended certification year remedy has also been applied to appropriate non-Board settlement agreements. *See, e.g., id.*

Nothing in the settlement agreement here suggests that the parties intended bargaining for an extended certification year or for any particular time period. The settlement agreement states simply that the Employer will bargain with the Union upon demand. Nevertheless, we view a "silent" non-Board settlement agreement such as this one as extending the certification period for a reasonable time if (1) the agreement was surrounded by sufficient "formalities" or Board involvement or (2)

the employer's promise to bargain was a *quid pro quo* for the Union's withdrawal of the § 8(a)(5) charge. *Id.* at 930–31. We examine each of these possibilities for extending the certification period.

### (1) *Formalities*

■ If the settlement agreement is surrounded by "formalities" or Board involvement, courts consider the parties more likely to have intended the scope of the bargaining duty contained in their settlement agreement to satisfy the Board standard of a remedial time extension. *See, e.g., NLRB v. Vantran Electric Corp.*, 580 F.2d 921, 924 (7th Cir.1978). Here the Board maintains that the parties' settlement agreement was surrounded by formalities and Board involvement because it permitted the withdrawal of the charges and the vacatur of its prior decision. We cannot agree. Such a view essentially would convert every non-Board settlement agreement into an agreement "surrounded by formalities" whenever the agreement required the dismissal of § 8(a)(5) charges. That is to say, a union could *never* withdraw § 8(a)(5) charges pursuant to a non-Board agreement without converting that private settlement into a "Board-approved" settlement because *every* dismissal requires Board consent.

This result runs counter to Congress' aim of promoting stable work relations and prompt dispute resolution. Further, in past cases, the level of Board involvement we found to satisfy the formalities test was much higher than that which is presented here. For example in both *All Brand*, 594 F.2d at 930 and *Straus Communications, Inc. v. NLRB*, 625 F.2d 458, 463 (2d Cir. 1980), the ALJ was informed of the terms of the settlement and conducted an *on the record inquiry* into the propriety of the settlement before accepting it. In contrast, the subject agreement was not seen by the ALJ before approving the dismissal of the charges.

In addition, as the Board argues in its brief,

"[i]f [it] perceived the need to intervene to protect the public interest, the appro-

priate time for such intervention was when the union requested it to withdraw charges and dismiss the complaint against the Employer. At that time the Board could have refused to dismiss the complaint unless the settlement agreement was amended to include a bargaining obligation for an extended certification year."

*Vantran,* 580 F.2d at 925; *see also Straus,* 625 F.2d at 464, n. 5. The Board's decision to forego intervention therefore precludes a finding of Board involvement and leaves the interpretation of the settlement agreement primarily to the language and intent of the parties. As a consequence, the parties' settlement agreement is not "surrounded by formalities."

### (2) *Quid Pro Quo*

 When an employer's agreement to bargain is the primary reason for a union's withdrawal of its § 8(a)(5) charge, the exchange includes a duty to bargain for an extended certification year. *See, e.g., Vantran,* 580 F.2d at 924–25. When it is not, the intent of the parties is less clear and the burden is on the Board seeking enforcement to show that the scope of the bargaining obligation was broader than the literal language of the parties' agreement. *Id.* at 925.

Relying on *Vantran* the Employer argues that its agreement not to appeal the representation decision was the *quid pro quo* for the Union's withdrawal of charges. In *Vantran,* the court held that the employer's agreement not to prosecute a state court damage action against the Union was the controlling *quid pro quo* and, therefore, found that the parties did not contemplate an extended certification year. 580 F.2d at 925. Under this analysis, the Employer argues that its agreement not to appeal the Board's earlier decision should be considered its primary concession and that accordingly the Union is not entitled to a time extension.

While facially appealing, the Employer's argument is inconsistent with our approach in *Straus.* In *Straus* we affirmed the Board's finding that even though the employer did not explicitly agree to bargain in

the settlement agreement, the nature of the concessions made by the employer indicated that the union would not have agreed to withdraw its pending charges without such a commitment. *Id.* at 464. The Board found that a duty to bargain was the *implicit quid pro quo* for the withdrawal of charges and that therefore the settlement agreement extended the certification year.

Applying that view to the instant case, the Board found that the Employer's agreement to bargain was the primary concession triggering a time extension because it concluded from the totality of concessions made by the Employer that the Union would not have withdrawn its charges without such a commitment by the Employer. There is no reason to disturb this factual finding of the Board. Of course, since the Employer has already bargained in good faith for nine and one-half months, the time extension triggered here obligates it to bargain, in good faith, only for the balance of two and one-half months.

### III

Enforcement of the Board's order is granted.