# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————

No. 01–1468                    September Term, 2002

Filed On: June 27, 2003

BPH & COMPANY, INC., AS SUCCESSOR TO HEPC PALMAS, INC.,
D/B/A WYNDHAM PALMAS DEL MAR RESORT AND VILLAS,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

—————

Before: EDWARDS, SENTELLE and HENDERSON, *Circuit Judges*.

## O R D E R

It is ORDERED by the court that the opinion filed in this case on June 27, 2003 be amended to

1.  Add to the end of the first paragraph of the opinion text, on page 2, (following "*Wyndham Palmas del Mar Resort*, 334 N.L.R.B. No. 70 (2001) [*hereinafter* Order].") the following sentence: "The Board has filed a cross-application for enforcement."; and

2.  Replace the final sentence of the opinion text on, on p. 13, with the following sentence "For the foregoing reasons, we grant the Company's petition for review, deny the Board's cross-application for enforcement and vacate the order of the Board."

*Per Curiam*

For the Court:

Mark Langer
Clerk

Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued February 6, 2003         Decided June 27, 2003

No. 01-1468

BPH & COMPANY, INC., AS SUCCESSOR TO HEPC PALMAS, INC.,
D/B/A WYNDHAM PALMAS DEL MAR RESORT AND VILLAS,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

————

On Petition for Review and Cross–Application
for Enforcement of an Order of the
National Labor Relations Board

————

*Howard S. Linzy* argued the cause for the petitioner. *Robert Lombardi* was on brief for the petitioner.

*Ruth E. Burdick*, Attorney, National Labor Relations Board, argued the cause for the respondent. *Arthur F. Rosenfeld*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Aileen A. Armstrong*, Deputy Associate

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

General Counsel, and *Margaret A. Gaines*, Attorney, were on brief for the respondent.

Before: EDWARDS, SENTELLE and HENDERSON, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: BPH & Co. (Company)[1] petitions this court for review of a decision and order of the National Labor Relations Board (NLRB or Board) holding that the Company violated section 8(a)(1) and (5) of the National Labor Relations Act (NLRA or Act), 29 U.S.C. § 158(a)(1), (5), when it withdrew its recognition of the Union de Trabajadores de la Industria Gastronomica de Puerto Rico, Local 610, HEREIU, AFL–CIO (Union) as the exclusive bargaining representative of its employees. *Wyndham Palmas del Mar Resort*, 334 N.L.R.B. No. 70 (2001) [*hereinafter* Order]. The Board has filed a cross-application for enforcement.

The Board maintains that the Company's petition should be dismissed because the Company failed to raise its objections to the Board before seeking judicial review as required by section 10(e) of the Act. *See* 29 U.S.C. § 160(e). We disagree and hold that it properly raised its objections before the Board. On the merits, we conclude that the Board's decision is not based on substantial evidence and, accordingly, grant the Company's petition.

## I.

### A.

In 1996 the Company acquired property in Humacao, Puerto Rico where it operated a resort hotel and restaurant. Shortly thereafter, in February 1997, the Company recognized the Union as the exclusive bargaining representative of its employees and commenced collective bargaining. Approximately six weeks after it recognized the Union (on March

---

[1] BPH & Co. is the successor to HEPC Palmas, Inc. which was the employer at all relevant times in this proceeding. For convenience, we refer to the employer as "the Company."

26),[2] the employees filed a petition to decertify the Union as their bargaining representative pursuant to sections 7 and 9 (a) and (c) of the NLRA, 29 U.S.C. §§ 157, 159(a), (c).

The Union then filed charges against the Company, alleging that it had unlawfully refused to bargain with the Union and had unlawfully coerced the employees to sign the decertification petition. In early June, the Union withdrew its refusal to bargain charge and entered an informal settlement agreement (Agreement)[3] with the Company regarding the remaining unfair labor practice charges. Under the Agreement, the Company agreed not to assist or solicit employees in the promotion, presentation or circulation of a petition to decertify the Union and not to promise employees increased wages and/or benefits in exchange for their support of a decertification petition. It further agreed to post a 60–day notice of the Agreement. The employee representative who filed the decertification petition also agreed to withdraw the petition. Significantly, the Agreement specifically includes a nonadmission clause as follows: "By entering into this settlement agreement the Employer [the Company] does not admit having violated the National Labor Relations Act." Settlement Agreement of June 5, 1997, Joint Appendix (JA) 18.

The parties recommenced bargaining until September 5, when employees filed a second decertification petition with the Board. The petition contained the signatures of the majority of employees (183 of 255) collected between July 10

---

[2] All events occurred in 1997 unless otherwise noted.

[3] The Board's Casehandling Manual describes three kinds of settlements: (1) a "formal" settlement, which ordinarily requires a Board order followed by a court order of enforcement; (2) an "informal" settlement, which provides that the charged party will take certain action to remedy ULPs and requires the Regional Director's approval but not a Board order or court decree; and (3) a "non-board adjustment." NLRB CASEHANDLING MANUAL §§ 10140, 10146.1, 10164.1 (Nov. 2002), *available at* http://www.nlrb.gov/manuals/chm/chm1–6.pdf. *See Mammoth of Cal.*, *Inc. v. NLRB*, 673 F.2d 1091 (9th Cir 1982). The Agreement here effects an informal settlement.

and August 23. On September 15 the Company formally withdrew recognition of the Union. The Company's withdrawal spurred the Union to refile charges and this time the Regional Director issued a complaint, charging that the Company had violated section 8(a)(1) and (5) of the Act by unlawfully withdrawing recognition of the Union. Order Consolidating Cases, Consolidated Complaint and Notice of Hearing, at ¶¶ 7, 9, JA 40. The matter was submitted to the Board on briefs and stipulated facts.

## B.

Under well-settled precedent, an incumbent union enjoys a presumption that it represents a majority of employees. *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 37 (1987). Unless it rebuts the presumption, an employer that refuses to bargain with the union by withdrawing recognition violates section 8(a)(1) and (5) of the Act. *NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 778 (1990).[4] It can do so by showing that at the time of the withdrawal, "either (1) the union did not in fact enjoy majority support, or (2) the employer had a 'good-faith' doubt, founded on a sufficient objective basis, of the union's majority support."[5] *Id.* (em-

---

[4] Section 8(a)(1) and (5) make it an unfair labor practice (ULP):

> (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title [section 7 of the NLRA];
>
> . . . .
>
> (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title [section 9(a) of the NLRA].

29 U.S.C. § 158(a)(1), (5).

[5] In *Levitz Furniture Co.* the Board eliminated the good faith doubt alternative, requiring the employer to show "the Union has *actually* lost support of the majority of the bargaining unit employees." *Levitz Furniture Co.* 333 N.L.R.B. No. 105, 2001 WL 314139, at *2, *11 (Mar. 29, 2001) (emphasis added); *see Marion Hosp. Corp. v. NLRB*, 321 F.3d 1178, 1186–87 (D.C. Cir. 2003) (acknowl-

phasis removed) (citing *Station KKHI*, 284 N.L.R.B. 1339 (1987), *enforced*, 891 F.2d 230 (9th Cir. 1989)).[6] A decertification petition signed by a majority of the bargaining unit suffices for an employer to have a good faith doubt about the union's majority support. *Vincent Indus. Plastics, Inc. v. NLRB*, 209 F.3d 727, 737 (D.C. Cir. 2000); *Sullivan Indus. v. NLRB*, 957 F.2d 890, 898 (D.C. Cir. 1992); *Nat'l Med. Hosp. of Orange Inc.*, 287 N.L.R.B. 415, 417 (1987). Nevertheless, the employer may not withdraw recognition based on a "good faith doubt" if unfair labor practices "significantly contribute to such a loss of majority or to the factors upon which doubt of such majority is based." *St. Agnes Med. Ctr. v. NLRB*, 871 F.2d 137, 146–47 (D.C. Cir. 1989) (internal quotations omitted). In that case, the ULPs "taint" the petition. Thus, if "the Board determines that unremedied ULPs contributed to the erosion of support for the union, the employer may commit an unfair labor practice by withdrawing its recognition." *Vincent Indus.*, 209 F.3d at 737 (citations omitted); *see Olson Bodies*, 206 N.L.R.B. 779, 780 (1973). To make its determination, the Board uses the four-factor test of *Master Slack Corp.*, 271 N.L.R.B. 78, 84 (1984).[7] *Vincent Indus.*, 209 F.3d at 737; *Lee Lumber & Bldg. Material Corp. v. NLRB*,

---

edging change in Board policy effected by *Levitz Furniture Co.*). The change does not apply, however, to cases—as here—pending when *Levitz* was decided. *Levitz Furniture Co.*, 333 N.L.R.B. No. 105, 2001 WL 314139, at *17.

[6] The presumption is irrebuttable, however, for one year following certification. *Curtin Matheson*, 494 U.S. at 777–78.

[7] The *Master Slack* test considers:

> (1) [t]he length of time between the unfair labor practices and the withdrawal of recognition; (2) the nature of the illegal acts, including the possibility of their detrimental or lasting effect on employees; (3) any possible tendency to cause employee disaffection from the union; and (4) the effect of the unlawful conduct on employee morale, organizational activities, and membership in the union.

*Master Slack Corp.*, 271 N.LR.B at 84; *see Vincent Indus.*, 209 F.3d at 737–38.

117 F.3d 1454, 1458–60 (D.C. Cir. 1997) (per curiam); *NLRB v. Williams Enters.*, 50 F.3d 1280, 1288 (4th Cir. 1995).

The Company argued before the Board that, consistent with this long-held precedent, it lawfully withdrew recognition of the Union based on the September 5 decertification petition signed by a majority of its employees. It emphasized that the Stipulation of Facts contained no facts supporting any ULP and that the Agreement provided no basis for any ULP finding because it contained an express nonadmission clause. *See supra* at 4–5. The Board, however, concluded that the Company had violated the Act. Order at 5. Without finding that any ULP in fact tainted the petition, presumably because, as it acknowledged, "there has been no finding by the Board (or admission by the Respondent) that an unfair labor practice was committed," the Board decided that an employer that enters into a settlement agreement under which it agrees to remedial notice posting cannot "lawfully challenge the Union's majority status on the basis of [an] antiunion petition that was signed during the 60–day posting period." *Id.* at 3, 5. Relying on its decision in *Douglas-Randall*, 320 N.L.R.B. 431 (1995), and on the holding in *Poole Foundry & Machine Co. v. NLRB*, 192 F.2d 740 (4th Cir. 1951), the Board defended its decision—despite the fact that it found no ULP that caused disaffection with the Union—on the policy ground that the Board must have the power to give effect to the remedies included in a settlement agreement. Order at 3 (" '[A] settlement agreement is not an admission or finding or unlawful conduct,' but . . . 'in order to give proper effect to such an agreement, the [decertification] petition should be dismissed.' " (quoting *Douglas-Randall*, 320 N.L.R.B. at 435 n.9)). Here, it said, the employer entered into an agreement under which it "agreed to take precisely the sort of remedial action that the Board might have ordered to redress a violation of the Act: to post a notice for 60 days stating that it would not engage in unfair labor practices that were the subject of the Union's charge." *Id.* at 3. If an employer could withdraw recognition based on a petition signed during the posting period, the Board reasoned, the purpose of the notice-posting remedy—to cure the "lingering

effects of the settled unfair labor practice conduct"—would be defeated. *Id.* at 4. In addition, the Board used the *charged* conduct to support its conclusion that the Company caused the employees to become disaffected with the Union, thereby tainting the decertification petition and making the Company's resulting withdrawal of recognition a violation of section 8(a)(1) and (5). *Id.* at 5. Accordingly, the Board ordered the Company to bargain with the Union. *Id.* at 5–6. The Company then petitioned this court for review.

## II.

The Board first asserts that we lack jurisdiction to consider the Company's petition because it did not raise before the Board, as required by section 10(e) of the Act, the issues it now presses before us. Section 10(e) of the Act mandates that "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e). The Board maintains that the Company's failure to challenge the "rule" established in the Board's decision ousts us of jurisdiction to review it. Objections to a new Board "rule"—here, the application of the *Master Slack* analysis to conduct that is simply charged—are preserved for judicial review, it emphasizes, only if they are first raised in a motion to reconsider before the Board. *See Int'l Ladies' Garment Workers v. Quality Mfg. Co.*, 420 U.S. 276, 281 n.3 (1975) (petitioner's objection that Board's application of new theory of liability violated its due process rights required to be raised first in post-decision motion); *see also Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 666 (1982) (parties' failure to raise issue on reconsideration before Board prevented judicial review); *Corson & Gruman Co. v. NLRB*, 899 F.2d 47, 49–50 (D.C. Cir. 1990) (per curiam) (section 10(e) barred objection to retroactive application of new Board rule because objection not first raised in motion to reconsider).

The critical inquiry under section 10(e), however, is "whether the Board received adequate notice of the basis for the

objection." *Alwin Mfg. Co., Inc. v. NLRB*, 192 F.3d 133, 143 (D.C. Cir. 1999); *see Marshall Field & Co. v. NLRB*, 318 U.S. 253, 255 (1943) (per curiam) (objections sufficient to "apprise the Board that [the party] intend[s] to press the question" on appeal); *Parsippany Hotel Mgt. Co. v. NLRB*, 99 F.3d 413, 417 (D.C. Cir. 1996) (ground for exception must be evident if not explicit); *see also Local 900, Int'l Union of Elec. v. NLRB*, 727 F.2d 1184, 1192 (D.C. Cir. 1984) (notice of objection sufficient to preserve issue not discussed by Board). Here, despite the Board's first-time application of *Master Slack* to alleged, as opposed to established, conduct and despite the fact that the Company's attack on the Board's new application is made for the first time before us, the Board was sufficiently apprised, for the purpose of section 10(e), of the critical issue—whether the Board's ULP findings are supported by substantial evidence.

Indeed, in the Company's brief to the Board, it argued that it did not violate the Act because it properly relied on the second decertification petition to withdraw recognition of the Union. It asserted that the decertification petition was not tainted because neither the Stipulation of Facts nor the allegations set forth in the Agreement constituted sufficient evidence upon which the Board could find it had caused employee disaffection with the Union, declaring:

> There is no evidence in the Stipulation of Facts of management coercion or of employer involvement in the gathering of signatures. And it cannot be argued that the March 1997 charges taint the validity of [the petition]. The parties amicably settled those disputes, and the settlement expressly disavowed any wrongdoing by [the Company]. Neither the Settlement Agreement nor the posted notices call into question the objectivity or validity of the signatures in [the petition].

Brief of Respondent at 6–7, JA 108–09. The Company further emphasized:

> A stipulated set of facts eliminates any fact dispute, and the stipulations firmly establish the requisite elements of a lawful withdrawal of recognition by [the Company]: (1)

> a written petition; (2) signed by a substantial majority of employees; (3) in the absence of any unfair labor practices; and (4) presented to [the Company's] General Manager. [The Company] properly acted on its doubt about the Union's majority status.

*Id.* at 7.

We believe the Company adequately apprised the Board of its insufficiency-of-evidence argument to comply with section 10(e). The Board in fact acknowledged the Company's insufficiency argument: "The Respondent asserts that the petition was not tainted, because there is no evidence of management coercion or involvement in the collection of signatures." Order at 2. Accordingly, we conclude that the Board was sufficiently apprised of the Company's substantial evidence objection, notwithstanding its not being addressed expressly to the conduct alleged in the Agreement, to allow us to review the Company's petition.

If the Board orders an employer to bargain with a union notwithstanding the existence of a facially valid decertification petition, we have consistently required the Board to support with substantial evidence its finding that the employer's ULP(s) "tended to undermine a union's majority support." *Quazite v. NLRB*, 87 F.3d 493, 496 (D.C. Cir. 1996); *Avecor Inc. v. NLRB*, 931 F.2d 924, 934 (D.C. Cir. 1991), *cert. denied*, 502 U.S. 1048 (1992) (substantial evidence must support finding that ULP tended to undermine majority strength).

Although the Board does not dispute that in *adjudicated* cases it may not find that an employer unlawfully withdrew recognition based on a decertification petition without also finding—based on substantial evidence—that the employer's ULP(s) caused disaffection with the union,[8] it nonetheless asserts that it may find that the employer violated section

---

[8] The Board acknowledges as much: "[U]nlike *Master Slack*, the Union's unfair labor practice charge was resolved by an informal Board settlement agreement; there has been no finding by the Board (or admission by the Respondent) that an unfair labor practice was committed." Order at 3.

8(a)(1) and (5) because "regardless whether [the Company] admitted or denied engaging in unlawful conduct, [it] agreed to a remedy." *Id.* at 4.

The Board uses the Fourth Circuit's decision in *Poole Foundry & Machine Co. v. NLRB*, 192 F.2d at 743–44, as authority for its conclusion.[9] In *Poole* the court upheld the Board's bargaining order, concluding that the employer's withdrawal of recognition of the union based on a decertification petition signed by sixty-four of sixty-six employees within four months of the employer's settlement agreement with the union violated section 8(a)(1) and (5) of the Act. *Id.* The court acknowledged that "[w]hile not an admission of past liability, a settlement agreement does constitute a basis for future liability and the parties recognize a status thereby fixed." *Id.* at 743. It explained,

> An entire structure or course of future labor relationships may well be bottomed upon the binding effect of a status fixed by the terms of a settlement agreement. . . . Otherwise, settlement agreements might indeed have little practical effect as an amicable and judicious means to expeditious disposal of disputes arising under the terms of the Act.

*Id.*

The Board reads this language to empower it to fashion a rule that, even without a ULP finding, ensures that the remedy contained in a settlement agreement achieves its purpose. Just as the Board in *Poole* required that an employer that agreed to bargain with the union agreed to do so for a reasonable time, thereby furthering the purpose of that remedy, so too can the Board adopt a rule designed to ensure that the purpose of the notice-posting provision is accom-

---

[9] The Board also relies on its decision in *Douglas-Randall*, in which it affirmed the Regional Director's dismissal of a decertification petition after the employer settled section 8(a)(5) charges. The *Douglas-Randall* decision was not judicially reviewed and its rationale is expressly derived from *Poole*. *Douglas-Randall*, 320 N.L.R.B. at 432–33.

plished, namely: " 'to provide sufficient time to dispel the harmful effects of the [allegedly unlawful] conduct' and to ensure that employees are fully informed of their statutory rights." Order at 4 (quoting *Chet Monez Ford*, 241 N.L.R.B. 349, 351 (1979) (alterations in original)).

We believe the Board missed the point of *Poole.* In approving the Board's "reasonable time" requirement, the Fourth Circuit upheld the Board's holding that an agreement to bargain with the union necessarily implies an agreement to bargain for a reasonable time—otherwise the agreement would be meaningless. *Poole*, 192 F.2d at 743–44. By withdrawing recognition less than four months later, the employer violated section 8(a)(1) and (5) because the employer had gone back on its agreement to bargain: "It follows that Poole, after having solemnly agreed to bargain with the Union, should not be permitted, within three and one-half months after the agreement, to refuse so to bargain, even if as here, the Union clearly did not represent a majority of the employees." *Id.* The Board's power to act in that case was not based on the fact that the employer "agreed to a remedy" but instead on the fact that the employer violated the settlement agreement.[10]

---

[10] We also note that *Poole* has been limited to cases in which section 8(a)(5) refusal-to-bargain charges are made and the employer agrees to bargain with the union. As the Seventh Circuit explained:

Underlying [the *Poole*] rationale are the competing interests of employee free choice versus stable bargaining relationships and industrial peace. The Board has implicitly made the determination that employee free choice may be temporarily sacrificed (in that an employer may be forced to bargain with a union that no longer has the support of a majority of the employees) for a "reasonable time" so as to give the bargaining relationship an opportunity to succeed and thereby promote industrial stability . . . . It appears to us, however, that the primary justification for this infringement on employee free choice is to restore with some force a bargaining relationship that was interrupted as a result of the employer's refusal to bargain. That justification is absent here [because] [i]n the present case, unlike in any

We well recognize that the Board bears the "primary responsibility for developing and applying national labor policy," *Curtin Matheson*, 494 U.S. at 786, and "necessarily must have the authority to formulate rules to fill the interstices of the broad statutory provisions." *Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 500–01 (1978). In addition, we will "uphold a Board rule as long as it is rational and consistent with the Act, even if we would have formulated a different rule." *Curtin Matheson*, 494 U.S. at 787 (citation omitted). But such deference is not afforded if the Board's rule is inconsistent with the Act. *NLRB v. United Food & Comm. Workers Union, Local 23*, 484 U.S. 112, 123–24 (1987). Here the Board's rule contravenes the Act because it allows the Board to routinely find a violation of the Act in the absence of substantial evidence. The only evidence on which the Board based its finding that the Company's ULPs caused the loss of support for the Union is the Agreement—an Agreement that specifically provides that the Company admitted no wrongdoing. This falls far short of satisfying the substantial evidence standard.

The Board maintains that our rejection of its new rule will undercut Board-supervised settlement agreements because, for example, "an employer could commit serious unfair labor practices, sign a settlement agreement with a nonadmission clause, and then avoid its duty to bargain by relying on the

---

other case in which the Board has ordered the employer to bargain for a reasonable time on the basis of a settlement agreement, the employer was not even alleged to have refused to bargain prior to the settlement.

*NLRB v. Key Motors Corp.*, 579 F.2d 1388, 1390–91 (7th Cir. 1978); *see also NLRB v. Vantran Elec. Corp.*, 580 F.2d 921, 925 (7th Cir. 1978) (where it was unclear settlement agreement required employer to bargain for a reasonable time, "Board exceeded its remedial powers by ordering the employer to bargain for an extended certification year on the basis of this . . . settlement").

*Poole*, then, does not support the Board's decision here for the additional reason that section 8(a)(5) charges were not the subject of the settlement agreement—they were withdrawn—and the Company did not agree to bargain with the Union.

union's loss of majority support attributable to the employer's own unremedied conduct." Order at 4. The Board's argument rests on two fallacious assumptions: first, that a settling party is necessarily guilty of the conduct with which it has been charged; and, second, that the Board will have no way of protecting against parties who seek to use a nonadmission clause in a settlement agreement to avoid sanctions for ULPs.

The Board's first assumption is counterfactual; the second is specious. A charged party cannot compel the Board or its agents to enter into a settlement agreement. If, in a case such as this one, the Regional Director is convinced that the employer is guilty of unfair labor practices, he can either decline to approve an informal settlement agreement and insist that the unfair labor practices be adjudicated or require an admission of liability from the employer as a condition of settlement. In fact, current Board policy advises that "[n]on-admission clauses should not be routinely incorporated in settlement agreements," NLRB CASEHANDLING MANUAL § 10130.8, so that Board agents have reason to understand they can reject such clauses in egregious cases. If, however, the Regional Director elects to approve a settlement in which the parties specifically agree that the charged party "does not admit having violated the National Labor Relations Act," as here, then, plainly, the employer has not agreed to remedy *unfair labor practices*. Rather, the employer has agreed to take certain actions to secure a dismissal of the pending unfair labor practice charges—nothing more and nothing less. And in any event, if a party fails to comply fully with a settlement agreement, the Regional Director can revoke approval of the agreement and issue or reissue the complaint. NLRB CASEHANDLING MANUAL § 10152. In short, the Board is in no way thwarted if it is bound by the terms of a settlement agreement which includes a nonadmission clause.

For the foregoing reasons, we grant the Company's petition for review, deny the Board's cross-application for enforcement and vacate the order of the Board.

*So ordered.*